IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOSE PANDO and MARIE PANDO, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | CIV-17-1062-R |
| BARBERWIND TURBINES, LLC, BARBERWIND, LLC, GERALD L. BARBER, SPECTRUM ENGINEERING SERVICES, INC., OF GREENVILLE CAROLINA INTEGRATED SOLUTIONS, LLC, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| SPECTRUM ENGINEERING SERVICES INC., OF GREENVILLE, | ) ) ) | |
| Defendant/Third Party Plaintiff | ) ) | |
| v. | ) ) | |
| WISDOM RIDES, INC. and YANCEY CRANES SERVICES, LLC | ) ) ) | |
| Third Party Defendants. | ) | |

**<u>ORDER</u>**

Before this Court is Defendant Carolina Integrated Solutions ("CIS") Motion to Dismiss asserting that the Court lacks personal jurisdiction over this non-resident Defendant. (Doc. 61) Plaintiffs responded to the motion, conceding the lack of general personal jurisdiction but asserting sufficient minimum contacts for the exercise of specific jurisdiction over CIS. (Doc. No. 63). Defendant filed a Reply in support of its request for

dismissal. (Doc. No. 64). The matter is fully briefed and at issue. For the reasons stated herein, the Court DENIES Defendant's motion.[1]

Plaintiffs filed this products liability action against Defendant CIS and the other Defendants after Mr. Pando was injured when a wind turbine he was disassembling, allegedly at the direction of Defendant Gerald Barber, collapsed. Plaintiffs allege the turbine was "designed, built and/or sold by Defendants in Hooker, OK, at the direction of Gerald L Barber" (Doc No. 54, ¶ 4).[2] Defendant CIS, a limited liability company whose sole member is a Georgia corporation, is one of the "Defendants" allegedly engaged in the design and building of the turbine.[3]

Defendant asserts that it has no employees, representatives, or offices in Oklahoma. CIS does not do business in Oklahoma, nor does it advertise here. It has not performed services for anyone in Oklahoma, and, as it relates to this case, although Defendant CIS admits it fabricated certain parts for the turbine constructed by Mr. Barber, it shipped its parts within the state of South Carolina to Carbures, the non-party blade manufacturer, in Greenville, South Carolina, which assembled the blades. CIS asserts that it did not participate in the design, engineering, assembly or disassembly of the turbine at issue. Rather, it is a custom metal fabrication company that builds products according to customer design. (Doc. No. 61-1, ¶ 4). CIS asserts via affidavit of Scott Robinson, Executive Vice

---

[1] In the motion, which is premised on Rule 12(b)(2), Defendant notes that the allegations are all directed at "defendants" collectively, with no specific allegations naming Defendant CIS. Defendant CIS, however, did not seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

[2] Second Amended Complaint, second numbered paragraph 4.

[3] The Court previously concluded that Plaintiffs' jurisdictional allegations were insufficient to confer subject matter jurisdiction on this Court, because they had not alleged the domicile of the members of the limited liability company Defendants. Plaintiff responded to the Court's show cause order and has established that the parties are diverse.

2

President of CIS, that it was retained by Gerald Barber to fabricate a Hub Connection Assembly, Mid Hub and Tip Side Connection Assemblies and Tip Assembly, and that all related work was completed in South Carolina. (Doc. No. 61-1, ¶¶ 9-10). Mr. Robinson avers he was in Oklahoma, "at the location where the turbine was constructed two times before the incident which is the subject of this lawsuit. Once to get a better understanding of the scope of the project and determine if the customer would need the services of CIS for future projects and once to inspect some broken welds." (*Id.*, ¶ 14). He does not identify the date of either of his visits to Oklahoma but indicates both pre-dated the July 17, 2017 collapse of the turbine.[4]

Plaintiff does not contest many of Defendant's jurisdictional allegations, but he nonetheless insists that this Court has personal jurisdiction over Defendant, in part because CIS knew the parts it welded were to be installed on a turbine being constructed in Oklahoma and because a representative of CIS visited Oklahoma twice -- once to inspect welds -- and the collapse of the turbine was the result of improper design of the weld connection.[5]

When a defendant contests the court's jurisdiction, "'plaintiff bears the burden of establishing personal jurisdiction over the defendant.'" *See Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996) (*quoting Behagen v. Amateur*

---

[4] According to interrogatory responses provided to Plaintiff by co-Defendants Barberwind Turbines, LLC, Barberwind, LLC, and Gerald L. Barber, "Scott Robinson . . . visited Oklahoma sometime before the First Incident to inspect cracking around one of Carolina's welds. Mr. Robinson concluded that the cracking was not a product of improper welding work and left." (Doc. No. 63-6, p. 2).

[5] Plaintiffs refer to two incidents, the first on June 10, 2017 when a turbine rotor collapsed during construction and the second on June 19, 2017, when the entire rim collapsed during disassembly injuring Mr. Pando.

*Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984), *cert. denied*, 471 U.S. 1010 (1985)). In the preliminary stages of litigation, the plaintiff's burden is to establish a *prima facie* case that jurisdiction exists. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). The Court must accept well-pled factual allegations of the complaint as true unless the defendant contradicts those allegations via affidavit. *Behagen*, 744 F.2d at 733. If the parties' evidence is conflicting, factual disputes are resolved in the plaintiff's favor. *Id*.

The Court follows state law in determining the outer limits of its jurisdiction over persons. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Oklahoma's long-arm statute extends jurisdiction to the fullest extent allowed by the Due Process Clause of the Fourteenth Amendment. Okla. Stat. tit. 12 § 2004(F). Under the Due Process Clause, this Court may exercise jurisdiction over a defendant if (1) "the defendant purposefully established minimum contacts" with the forum, and (2) the "assertion of personal jurisdiction would comport with [traditional notions of] fair play and substantial justice." *Old Republic*, 877 F.3d at 903 (*quoting Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985), *quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317(1945)).

There are two types of personal jurisdiction -- general and specific. Plaintiff does not argue that Defendant CIS's contacts with Oklahoma are sufficient to support general personal jurisdiction. Accordingly, the Court's inquiry in this case is case specific, wherein it inquires (1) did defendant purposefully direct its activities at the forum state; (2) do plaintiffs' claims arise out of those activities; and (3) would the exercise of jurisdiction be reasonable. *Id.* at 904-05 (citations omitted). Defendant's suit-related conduct must have

4

created a substantial connection with the forum state. *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

As stated above, the threshold inquiry for specific jurisdiction is whether Defendant reached out to the forum—that is, whether Defendant "purposefully directed its activities at residents of the forum state." *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (internal quotation marks omitted) (*citing Burger King*, 471 U.S. at 472); *see also Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004) ("To support specific jurisdiction, there must be 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" (*quoting Hanson v. Denckla*, 357 U.S. 235, 253 (1958))). "'[P]urposeful direction' has three elements: '(a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state . . . .'" *Newsome v. Gallacher*, 722 F.3d 1257, 1264–65 (10th Cir. 2013) (ellipsis original) (*quoting Dudnikov*, 514 F.3d at 1072).

As it relates to products liability,

> [t]he requirement of purposeful availment . . . precludes personal jurisdiction as the result of random, fortuitous, or attenuated contacts. Although it is foreseeable that a product might travel to a forum state, such foreseeability is not a sufficient benchmark for personal jurisdiction under the Due Process Clause. The foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

*Monge v. RG Petro-Machinery (Group) Co.*, 701 F.3d 598, 613 (*quoting World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980) (quotation marks, additional

citations, and brackets omitted)); *see also Bell Helicopter*, 385 F.3d at 1296 ("Generally speaking, specific jurisdiction must be based on actions by the defendant and not on events that are the result of unilateral actions taken by someone else.") The Court finds that Defendant's knowledge that the parts it manufactured and provided to a third party for use in a turbine to be erected in Oklahoma does not itself support a finding of personal jurisdiction.

However, this knowledge coupled with the visits Mr. Robinson made to Oklahoma in conjunction with the turbine project lead the Court to conclude at this stage that Plaintiff has sufficiently established that Defendant CIS purposely directed its activities at Oklahoma. Although CIS contends that Mr. Robinson's visit to Oklahoma for the purpose of inspecting broken welds does not provide a basis for exercising personal jurisdiction, the Court finds that this visit permits Plaintiffs to make their *prima facie* case for the exercise of specific personal jurisdiction, because Defendant availed itself of this jurisdiction by sending a representative to inspect the work it performed and shipped within South Carolina and because Defendant should have anticipated that if the welds failed, the brunt of the injury would be felt in Oklahoma.[6]

Turning to the second inquiry, do Plaintiffs' claims arise out of CIS's contacts with the Oklahoma? Again, the Court finds that at this stage Plaintiff has sufficiently established that Plaintiff's injuries, allegedly at least partially the result of defective welding by CIS, are related to Mr. Robinson's pre-incident visit to Oklahoma where he inspected cracks

---

[6] The Pandos are residents of Kansas, but the failure and Mr. Pando's injuries occurred in Oklahoma where he was working at the time.

near the CIS work. The Tenth Circuit has enunciated two tests upon which a plaintiff may establish that claims arise out of or relate to a defendant's forum contacts− the "proximate cause" approach and the "but-for causation" approach. *Newsome*, 722 F.3d at 1269. In *Newsome,* the court declined to choose one test over the other, noting that the plaintiff therein satisfied the more onerous proximate cause test. Under the but-for approach, "'any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of specific jurisdiction.' *Id.* (internal quotation marks omitted)(*quoting Dudnikov*, 514 F.3d at 1078). The proximate-cause approach "'is considerably more restrictive and calls for courts to examine whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claims.'" *Id*. at 1269–70 (*quoting Dudnikov*, 514 F.3d at 1078)(internal quotation marks omitted). Despite their differences, both approaches require a "true causal element" between a defendant's forum contacts and a plaintiff's claim. *Shrader v. Biddinger*, 633 F.3d 1235, 1246 n.8 (10th Cir. 2011) (*citing Dudnikov*, 514 F.3d at 1078-79). Similarly, this Court need not decide which test is appropriate, because Defendant's contact with the forum state, specifically inspection of the weld sites by Mr. Robinson, is relevant to the merits of Plaintiff's claims, which apparently in part will be premised on alleged defects in CIS's work. Therefore, the Court finds that Plaintiffs have met their obligation at this stage to establish a *prima facie* case as to the second inquiry in the specific personal jurisdiction arena.

Plaintiffs have carried their burden of establishing that Defendant CIS purposefully directed its conduct at Oklahoma and that this lawsuit arose out of CIS's contact with the

state. Therefore, the burden shifts to Defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Dudnikov*, 514 F.3d at 1080 (internal quotation marks and citation omitted). Defendant presents no arguments in support of this consideration, i.e. it does not address the burden of litigating in Oklahoma, Oklahoma's interest in resolving the dispute, Plaintiffs' interest in convenient effectual relief or the benefit of efficient resolution of controversies. *Newsome*, 722 F.3d at 1271. Therefore, Defendant has not met its burden.

For the reasons set forth herein, the Court finds that it has personal jurisdiction over Defendant CIS, and accordingly, the Motion to Dismiss is DENIED.

**IT IS SO ORDERED** this 13th day of August 2019.

*[Signature]*
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE